UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| PAMELA MATHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:10cv390 |
| | ) | |
| CITY OF SOUTH BEND, | ) | |
| ALADEAN M. DEROSE, in her individual | ) | |
| and official capacities, | ) | |
| | ) | |
| Defendants.[1] | ) | |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendants, City of South Bend ("the City"), and Aladean M. DeRose in her individual and official capacities ("DeRose"), on December 19, 2012. The plaintiff, Pamela Mathews ("Mathews"), proceeding *pro se*, filed her response in the form of a motion to strike on January 9, 2013. The defendants filed their opposition to the motion to strike on February 8, 2013.

For the following reasons, the motion for summary judgment will be granted and the motion to strike will be denied.

Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1] The docket sheet in this case lists John H. Haskin as a "Movant" in this case. Haskin is one of Mathews' former attorneys of record and is not a party in this case. On October 4, 2011, Haskin filed a motion to withdraw as attorney [DE 52], which motion was granted on November 14, 2011 [DE 66].

Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

Discussion

Mathews has filed a four-count complaint against the defendants. First, Mathews alleges discrimination on the basis of race, and retaliation in violation of her rights under Title VII of the Civil Rights Act, 42 U.S.C. §2000e. Second, Mathews alleges a violation of Title VIII rights under the Fair Housing Act, 42 U.S.C. §3601, *et seq.* Third, Mathews alleges that the City, and DeRose in her individual and official capacities, violated Mathews' rights of free speech, right to petition for a redress of grievances, and her rights under the First and Fourteenth Amendments to the United States Constitution. Finally, Mathews alleges that the defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The following facts are pertinent to the motions before the court. On or about October 28, 2008, Mathews filed a complaint with the U.S. Housing and Urban Development Department against the Community Development Department of the City of South Bend (the "HUD Complaint"). The HUD Complaint was pending at all material times relating to Mathews' Complaint. Subsequent to filing the HUD Complaint, Mathews filed an application for employment with the City Department of Law. The City responded to the application by letter

dated January 12, 2009, advising Mathews that the City had imposed a hiring freeze for calendar year 2009, thereby eliminating any employment opportunities or paid internships within the City's Department of Law. The January 12, 2009 letter further explained to Mathews that if she wished to volunteer her services without compensation that she should contact Chief Assistant City Attorney, DeRose, to discuss the matter.

On or about February 10, 2009, Mathews met with DeRose. At that time, Mathews did not disclose her pending HUD Complaint. Without DeRose knowing of Mathews' pending litigation, DeRose and Mathews agreed that Mathews would be permitted to serve without compensation as a volunteer paralegal in the Department of Law for the spring and early summer period of 2009. After announcing to attorneys in the City Legal Department that Mathews would be serving as a volunteer in the Legal Department, DeRose was informed by other attorneys in the department that the Legal Department was serving as legal counsel to the City's Community and Economic Development Department ("CEDD"), and in such capacity was defending the complaint to HUD filed by Mathews against CEDD.

On the same day that DeRose learned of this conflict of interests, DeRose sent a second letter to Mathews notifying Mathews that her pending lawsuit against the City constituted a conflict of interest which disqualified Mathews from serving in the City's Legal Department, and further explained that allowing Mathews to serve on a volunteer basis would be inappropriate. The letter further notified Mathews that the City was withdrawing the opportunity for Mathews to volunteer in the Legal Department due to the conflict, and the ethical rules which prevented the lawyers from compromising their effective advocacy of clients. It was further explained that Mathews' presence in the Legal Department would raise concerns with the City's client, CEDD.

In response to DeRose's letter, Mathews sent a handwritten thank you note expressing her gratitude and affirmatively acknowledging that she understood the rules of ethics referenced above.

However, in her current Amended Complaint against the City and DeRose, Mathews alleges that the City unlawfully discriminated against her in violation of her right to complain about unlawful discrimination based on race and/or sex. She also claims that she was unlawfully retaliated against in violation of her right to complain about unlawful discrimination based on race and/or sex in the area of providing municipal services for housing. She further claims that the actions of the defendants violated her First Amendment right to free speech when they refused to consider her applications, and that she was treated differently because of her race in violation of the Equal Protection Clause of the Fourteenth Amendment.

In support of their motion for summary judgment, the defendants first argue that DeRose is entitled to qualified immunity. The Supreme Court case of *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), set out a two-step analysis to be employed in addressing the issue of qualified immunity for defendants acting in their individual capacities as government employees. The analysis for qualified immunity requires the court to: (1) first determine whether a constitutional violation occurred and (2) if a constitutional violation is established, a determination must be made as to whether the government employee's conduct violated "clearly established standards." *Saucier*, 121 S. Ct. at 2158. Once a defendant raises a qualified immunity defense, it is the Plaintiff's burden to demonstrate the violation of a clearly established right. *Foreman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir. 1997), cert. denied, 522 U.S. 997 (1997).

The doctrine of qualified immunity is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity protects

governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Groh v. Ramirez*, 540 U.S. 551, 567 (2004). Qualified immunity covers mistakes of judgment whether the mistake is one of fact or law. *Butz v. Economou*, 438 U.S. 478, 507 (1978).

The Supreme Court recently reconsidered *Saucier* and ruled that the judges of the district courts and courts of appeals "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand". *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir 2010), citing *Pearson v. Callahan*, 555 U.S. 223 (2009).

As stated above, the doctrine of qualified immunity applies where the government official's mistake is one of law or fact. The defendants argue that DeRose's mistakes, if any, were reasonable mistakes of fact and that if DeRose made any mistakes, it was because Mathews acted unreasonably in failing to advise DeRose of the pending litigation.

The defendants maintain that DeRose acted reasonably in performing her duties which included adherence to the Rules of Professional Conduct. Indiana Rule of Professional Conduct 1.7 provides that "a lawyer shall not represent a client if the representation involves a concurrent

5

conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client". Rule 9.1 provides that "A lawyer is responsible for all of the professional actions of a non-lawyer assistant performing services at the lawyer's direction and should take reasonable measures to insure that the non-lawyer assistant's conduct is consistent with the lawyer's obligations under the Rules of Professional Conduct. A lawyer's obligation to avoid a conflict of interest is imputed to those employees whom the lawyer is supervising".

Mathews had previously initiated litigation against a department of the City for which the City Legal Department was serving as legal counsel. This is a clear and distinct conflict between the City's interests and Mathews interests in the outcome of the litigation. DeRose simply advised Mathews that she could not be considered for a volunteer intern position because of the conflict that such an arrangement would create. In accordance with the Rules of Professional Responsibility by which she was bound, DeRose advised Mathews that she would not be permitted to volunteer as an unpaid intern in the City's Legal Department solely due to the conflict of interests. Indiana Rule of Professional Conduct 1.7 outlines an attorney's duty to avoid conflicts of interests, not only between clients the attorney may represent, but also between the attorney and his clients including those conflicts created by "a personal interest of the lawyer." Thus, a conflict of interest is inherent where a firm employs an individual who is suing one of the firm's clients. This is especially true when the firm is itself defending the client against their own employee's suit.

In 1991, the Indiana State Bar Association Legal Ethics Committee addressed the issue of conflicts of interests within the public sector. In an unpublished opinion, the Ethics

Committee addressed ethical concerns where an attorney who worked part-time as a city attorney shared his private practice office space with another attorney who served as a part-time county attorney. The Ethics Committee held that no conflict existed when attorneys represented the city and county as opposing parties in a dispute so long as they had client consent, and were not considered to be "in a firm."

In a Comment to Rule 1.10, the Ethics Committee identified some criteria for determining what arrangement would constitute a "firm" noting:

> the mere sharing of office space and occasional consulting or assisting do not, per se, cause the attorneys to be deemed a firm. However, if the attorneys hold themselves out to the public as a firm or operate as a firm, they may be deemed a firm for purposes of this Rule. An important inquiry is whether the attorneys have mutual access to the confidential client files of the other attorney.

The Ethics Committee noted that such inquiries were necessarily fact-sensitive, but emphasized that client confidence in the confidentiality of their information was of paramount importance.

Although the City's Department of Law is not a law firm in the traditional sense, it functions in much the same manner. Attorneys share office space, share administrative assistants, share legal resources, and are listed on the same letterhead by name and by title. In addition, attorneys in the Department of Law have unfettered access to the files of other attorneys since it is expected that all attorneys in the Department serve the same client – the City of South Bend, which includes each of its departments, divisions, boards and commissions.

Even though Mathews was provided notice of the summary judgment motion and her duty to file a response to the arguments therein, Mathews has only filed a two page "motion to strike" in response to the motion for summary judgment. In this motion to strike, Mathews does not discuss any of the arguments raised by the defendants, and merely states that she had no choice but to take legal action and that she has suffered tremendous loss of quality of life. Mathews' motion to strike is

7

also improper as it does not meet any of the criteria set forth in Federal Rule of Civil Procedure 12(f) regarding motions to strike, and does not set forth any legal basis as to why any pleading or other material should be stricken. Therefore, Mathews' motion to strike will be denied.

Clearly, DeRose followed clearly established standards when she informed Mathews that she would not be permitted to volunteer in the City's Department of Law due to a conflict of interest. Therefore, DeRose is entitled to qualified immunity for her actions.

The defendants also seek summary judgment on Mathews' Title VII discrimination and retaliation claims. Mathews alleges that the City violated her rights under Title VII of the Civil Rights Act, 42 U.S.C. §2000e on the basis of race and retaliation when the City would not permit her to serve as a volunteer in the Department of Law. The defendants note that the position sought by Mathews was that of a "volunteer" which is not deemed to be an "employee" such that she is entitled to the protections and remedies afforded by Title VII.

In her Amended Complaint, Mathews acknowledges that the position she sought within the City Legal Department was as a volunteer, and that the volunteer position provided no payment (i.e. *pro bono*) and provided no benefits from the City. Mathews was not offered any monetary compensation, non-monetary compensation, or any benefits from the City for her voluntary services.

This Court recently addressed the issue of whether an unpaid volunteer Reserve Police Officer for the Town of Bristol, Indiana was entitled to protection under Title VII in *Holder v. Town of Bristol*, 2009 U.S. Dist. LEXIS 85878 (N.D. Ind. Sept. 17, 2009). In *Holder*, the court granted summary judgment in favor of the city, finding that a volunteer, was not an "employee" for purposes of Title VII. As explained by the court:

> Without more, Holder's work for the Town of Bristol is more akin to community service than gainful employment. Since Holder has not demonstrated that he received appreciable consideration in exchange for their services, Holder is not an employee under Title VII and therefore cannot maintain an action under that

8

statute. Id. at 17.

Noting that the Seventh Circuit had not addressed the bright-line distinction between a volunteer and employee for purposes of Title VII, the Court recognized that several other circuits had considered the issue and had "uniformly held that remuneration in exchange for services is an essential condition to the existence of an employer-employee relationship." *Id* .at 7. *See also Xie v. Univ. of Utah*, 243 Fed. Appx. 367 (10th Cir. 2007) (holding a research associate who received no salary or benefits from the University was not an employee and, therefore, not entitled to relief under Title VII); *Jacob-Mua v. Veneman*, 289 F.3d 517, 521 (8th Cir. 2002) (upholding dismissal of volunteer's Title VII retaliation claim "because, as a nonemployee, she did not have standing to bring a retaliation claim under Title VII"); *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122 (2nd Cir. 2002) (holding an attorney serving a bar association in an unpaid, volunteer capacity did not have a viable cause of action under Title VII); *Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1243 (11th Cir 1998) (holding Congress "meant to limit the pool of potential Plaintiffs under Title VII; otherwise, any person could sue an 'employer' under the statute regardless of whether she actually had an employment relationship with that employer."); *Pinchas v. USA Deaf Sports Federation, Inc.*, 457 F. Supp. 2d 937 (D. S.D. 2006) (holding "[t]he existence of an employer-employee relationship is essential to a Title VII cause of action"). Clearly, as the position in the instant case was a voluntary, unpaid position devoid of any employer–employee relationship, Mathews was not an "employee" which is an essential element of a Title VII cause of action. Therefore, her Title VII claims fail as a matter of law.

The defendants next seek summary judgment as to Mathews' Title VII Fair Housing retaliation claim. In Count II of her Complaint, Mathews alleges that the City "unlawfully retaliated against [her] in violation of her right to complain about unlawful discrimination based on race

9

and/or sex in the area of providing municipal services for housing." Mathews further alleges that Defendants unlawfully interfered with her by "denying [her] employment opportunities for having filed a HUD complaint". According to Mathews, the defendants' actions constituted "unlawful interference and intimidation in violation of 42 U.S.C §3617" of the Fair Housing Act. However, Mathews has not alleged any claim that would entitle her to relief under the Fair Housing Act.

The purpose and intent of the Fair Housing Act, 42 U.S.C. §3601 *et seq*. ("FHA") is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 USC § 3601. The FHA makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of the fair housing rights. The FHA further defines an "aggrieved person" as any person who: (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur. 42 U.S.C. §3602..

More specifically, the FHA is intended to protect and provide remedies for persons who are alleging discrimination in the sale or rental of housing [42 U.S.C. §3604], discrimination in residential real estate transactions [42 U.S.C. §3605], and discrimination in the provision of brokerage services [42 U.S.C. §3606]. The FHA does *not* afford protections nor provide remedies to persons claiming employment discrimination such as those alleged by Mathews in her Amended Complaint.

In the present case, Mathews has not claimed a violation of those rights which are protected by the FHA. She has not alleged discrimination in the sale or rental of housing. She has not alleged discrimination in a real estate related transaction, and she has not alleged discrimination in the provision of brokerage related services. Rather, Mathews has attempted to use the FHA in order to re-plead her claim of employment discrimination under Title VII.

As noted above, Mathews' claim under Title VII fails because she cannot meet the threshold requirement of proving that she was an "employee" entitled to the protections of Title VII. Mathews' entire Amended Complaint is based upon her allegation that she was denied employment opportunities with the City due to discrimination. Her Amended Complaint simply does not raise any housing discrimination allegations, and the FHA does not provide remedies for discrimination in employment. Therefore, as Mathews has no valid claim under the Fair Housing Act, the City is entitled to judgment in its favor as a matter of law.

The court will now turn to Mathews' allegations that her First Amendment rights were violated. To fully analyze Mathews' claim for retaliation in violation of the First Amendment, the court must consider whether Mathews was actually an employee of the City. As addressed above, the facts are undisputed that the position Mathews sought was as unpaid volunteer in the Department of Law. By definition, a volunteer intern is a supervised temporary learning position for which the intern remains monetarily uncompensated. The sole benefit to be derived from the unpaid volunteer position would be to provide Mathews, or any person serving as an intern, practical experience and knowledge of the workings of a public legal department.

In any event, even assuming *arguendo* that Mathews had the status of an "employee", the courts have analyzed retaliation claims that concern an employee's assertion of his or her First Amendment freedom of speech rights under the analysis set forth in *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S. Ct. 1731 (1968), and in *Connick v. Myers,* 461 U.S. 138, 147, 103 S. Ct. 184(1983)). In *Pickering*, the United States Supreme Court struck a balance between the interests of the employee (as a citizen) in commenting upon matters of public concern and the interest of the State (as an employer) in promoting the efficiency of the public services it performs through its employees. Under *Pickering,* if the issue is a matter of public concern, the constitutionality of

government's restriction is a question of law. *Arndt v. Koby,* 309 F.2d 1247, 1252 (10th Cir. 2002).

The First Amendment offers certain protections for an employee who speaks upon a matter of public concern, but does not offer protection for an employee who speaks of matters only of personal interest. *Michael v. St. Joseph County,* 259 F.3d 842, 846 (7th Cir. 2001). Matters of public concern are examined by the content, form and context of the speech. *Connick v. Myers,* 461 U.S. 138, 147, 103 S. Ct. 184 (1983). Even when the speech is of public concern, substantial weight is given to the governmental employer when the employment is predicted to be disruptive, cause decreased morale, or create negative publicity or public image. *Crue v. Aiken¸* 370 F3rd 688, 685 (7th Cir. 2004).

In the case at bar, prior to seeking her volunteer internship with the City's Legal Department, Mathews filed suit against another City department. The lawsuit is a personal matter in which Mathews alleged personal losses or damages. The speech underlying Mathews' claim of retaliation is that of personal speech and as such not protected when analyzed under *Pickering-Connick*. Therefore, her claim fails as a matter of law.

However, even if all litigation filed against a governmental entity has a public interest component, then the second prong of the Court's test in *Pickering-Connick* must be considered which requires the governmental entity to show that keeping or hiring a person who has filed litigation against it would be disruptive, decrease morale, or that would create decrease of opinion by the public. In the present case, Mathews sought an unpaid, volunteer internship with the City's Legal Department during a point in time that the Legal Department was simultaneously engaged in defending Mathews' active lawsuit against another City department. Having an adverse litigant in the Department of Law while attorneys in that same department were engaged in defending the litigation would not only have been disruptive, it would have a chilling effect on the attorneys on staff.

Clearly, under the *Pickering-Connick* balancing test, the defendants had the right to restrict Mathews' speech -- or in this case to deny her employment -- because the need to efficiently and effectively operate the City's Legal Department in an ethically appropriate manner outweighed Mathews' First Amendment rights. Accordingly, the defendants are entitled to judgment in their favor as a matter of law.

Mathews has also alleged that the defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. First, Mathews alleges that by not allowing her to be a volunteer, she was treated differently based upon her race and in retaliation for the lawsuit against another City department. Mathews claims that by withdrawing the acceptance of her voluntary services, DeRose, in her individual capacity, acted with malice, improper motives, and/or reckless disregard of Mathews' 14$_{th}$ Amendment rights. The United States Supreme Court has held that, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982). *City of Cleburne, Texas v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985). Thus, statutes and policies that purport to classify individuals for purposes of dissimilar treatment must be conducted according to the appropriate standard of review. The appropriate standard is based on the nature of the classification at issue.

The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude . .

. [t]he general rule gives way, however, when a statute classifies by race, alienage, or national origin." *Cleburne,* at 440. (Internal citations omitted).

Although Mathews' complaint alleges her Equal Protection rights were violated because of her race, the reason given to her for the City's withdrawal of the opportunity to serve as a volunteer related only to her pending legal claim against the City, and the potential conflict of interest with the City. Thus, no classification based on "race, alienage, or national origin" was involved. Instead, in addition to the ethical considerations discussed above, the City Legal Department policy of avoiding conflicts of interest could be said to be akin to an economic policy decision, insofar as such decision relates to avoiding potentially unethical and costly legal entanglements between the City and prospective employees.

With respect to such "economic" policies, the United States Supreme Court has held that, "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). "On rational-basis review, a classification in a statute [] comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden "to negative every conceivable basis which might support it," *Id.*, at 314-15. (Internal citations omitted). Here, the policy bases are avoiding conflicts of interest for both economic and legal-ethics reasons, and there is a "strong presumption of validity."

In *State Troopers Non-Commissioned Officers Assoc. of New Jersey v. New Jersey,* 643 F.Supp.2d 615 (D. N.J. 2009), the District Court found that rational basis review was the appropriate standard where State Troopers were prohibited from engaging in outside legal work due to conflict of

interest reasons, stating:

> In the present case, Plaintiffs concede rational basis review applies to the Code of Ethics's prohibition on outside legal work. The challenged regulation does not draw lines according to suspect classes nor does it encroach upon a fundamental right. Accordingly, the Court will apply the rational basis test to the equal protection challenge to the Code of Ethics, which requires Plaintiffs to demonstrate "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational." *Id*., at 625. (Internal citations omitted).

Classifying job applicants who are litigants adverse to the Legal Department's clients as presenting a conflict of interest involves no suspect classification making rational basis review appropriate. Mathews had been offered the volunteer intern position by DeRose prior to DeRose's discovery of the conflict of interest that would be created by Mathews' volunteer service.

As required by *FCC v. Beach*, Mathews has failed to negate "every conceivable basis which might support" the classification in question. Accordingly, summary judgment will be granted in favor of the defendants.

## Conclusion

On the basis of the foregoing, the defendants' motion for summary judgment [DE 89] is hereby GRANTED.  Further, Mathews' motion to strike [92] is hereby DENIED.

As defendant South Bend Common Council was dismissed from this case on July 18,

15

2012, no defendants or claims remain in this case, and a Clerk's Judgment may be entered.

Entered: May 16, 2013.

                                                      s/ William C. Lee
                                                     William C. Lee, Judge
                                                   United States District Court